**Affirmed in part; Reversed in part and Remanded and Opinion Filed
November 7, 2022**



In the
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00058-CV

**FRISCO MEDICAL CENTER, L.L.P. AND TEXAS REGIONAL MEDICAL
CENTER, L.L.C., Appellants
V.
PAULA CHESTNUT AND WENDY BOLEN, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, Appellees**

**On Appeal from the 191st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-19-07283**

## MEMORANDUM OPINION
Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

Frisco Medical Center, L.L.P. and Texas Regional Medical Center, L.L.C. (the

Hospitals) appeal the trial court's order granting appellees Paula Chestnut and

Wendy Bolen's motion for class certification in a lawsuit regarding emergency

medical care fees. The Hospitals contend the trial court erred because (1) Texas Rule

of Civil Procedure 42's class certification requirements were not met; (2) the class

definition is improper; and (3) the order's trial plan is insufficient. We reverse the

trial court's order in part, affirm the order in part, and remand this case to the trial court for further proceedings.

**Background**

Appellees filed this class action lawsuit against the Hospitals in May 2019, complaining of the Hospitals' "unfair, false, misleading and deceptive practice of charging emergency care patients, seen at one of Defendants' hospital emergency room facilities, an 'Evaluation and Management Services Fee' (hereinafter 'E&M Fee') without providing notification of Defendants' intention to charge such a Fee for the patient's emergency room visit." In their live petition, appellees contended (1) "none of Defendants' Contracts described, mentioned, or informed emergency care patients of the hospital's intention to charge an E&M Fee for being seen and treated in the hospital's emergency room facilities"; (2) "neither the E&M Fee nor the intention to add an E&M Fee to the Total Charges billed to the patient's account is or was disclosed on any signage posted in or around the emergency room facilities, or disclosed verbally during the patient's registration process"; (3) "[d]espite the lack of disclosure, at all relevant times Defendants had a practice of charging emergency department patients a hidden and undisclosed E&M Fee set at one of five levels generally related to the seriousness and complexity of the patient's condition, with such level being determined after treatment had been furnished, based on a secret formula or algorithm known only to Defendants"; (4) "a reasonable consumer would deem advance knowledge that he or she would be charged a substantial E&M

–2–

Fee to be an important factor in determining whether or not to remain for treatment at Defendants' facilities or seek less costly treatment elsewhere"; and (5) "emergency care patients have an absolute right to be informed about a substantial E&M Fee prior to receiving treatment that will trigger such charge."

The petition also stated:

> This complaint applies to patients who received treatment and services at one of Defendants' hospital emergency care facilities on or after July 10, 2015, who were assessed an Evaluation and Management Services Fee for their emergency room visit designated with a CPT Code of 99281, 99282, 99283, 99284, or 99285, and who made payments for their visit and/or have a remaining account balance which has not been formally discharged or waived. By this complaint, Plaintiffs seek declaratory relief, injunctive relief, and restitution, on the basis that these E&M Fees were never properly disclosed in advance of treatment or agreed to. The relief requested is based on the fact that Defendants' billing practices with respect to the undisclosed E&M Fees were and continue to be unfair, unreasonable, unconscionable and/or violative of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq. ("DTPA"), as well as Texas' common law.

The petition asserted two causes of action: "declaratory judgment" and "request for relief under DTPA."

In their declaratory judgment cause of action, appellees stated:

> Plaintiffs and the members of the Class . . . contend that under Defendants' Contracts they should not have been required to pay for undisclosed E&M Fees. . . . To resolve the ongoing disputes over the propriety of Defendants' E&M Fees being charged under the circumstances described herein, Plaintiffs and the members of the Class are entitled to a determination as to whether patients had a "right to know" and/or Defendants had a "duty to disclose" their E&M Fees in advance of such E&M Fees being incurred, and are further entitled to a declaration and appropriate injunctive relief with regard to a patient's

legal rights and duties and the construction of Defendants' form Contracts. Specifically, Plaintiffs and the members of the Class are entitled to a declaration that Defendants' practice of charging a substantial undisclosed E&M Fee in addition to the charges for the specific services and treatments provided was not authorized by Defendants' form Contracts, was violative of Texas common law, and was violative of the DTPA.

That cause of action also asserted (1) plaintiffs and class members are entitled to "equitable relief, including restitution," and (2) the portions of the amounts plaintiffs and class members have paid that are attributable to the E&M Fees, and the cancellation of those portions of outstanding account balances that are attributable to the E&M Fees, "can be readily determined from Defendants' existing records without the need for individual trials or hearings." The petition asked the trial court to "issue a declaratory judgment declaring one or more of the following":

(a) that Defendants' billing practices with respect to E&M Fees as they relate to Plaintiffs and the Class are unconscionable under Texas common law;

(b) that Defendants' billing practices with respect to E&M Fees as they relate to Plaintiffs and the Class are an unconscionable action or course of action as defined by Tex. Bus. & Com. Code §17.45(5), a provision of the DTPA;

(c) that the form Contracts used in Defendants' emergency room facilities during the class period do not describe, mention, or authorize the undisclosed E&M Fees complained of herein;

(d) that Plaintiffs and members of the Class are not liable to Defendants for the E&M charges and are entitled to a refund of those portions of patient payments attributable to the E&M Fees; and

(e) that Defendants' billing practices as they relate to Plaintiffs and the Class are deceptive trade practices as defined in the DTPA and, more particularly, by Tex. Bus. & Com. Code §§ 17.46 and 17.50.

–4–

In their DTPA cause of action, appellees asserted the Hospitals "have committed one or more 'false, misleading, or deceptive acts or practices' and/or unconscionable trade practices" that "constitute one or more violations of . . . the DTPA: Tex. Bus. & Com. Code § 17.46(b), subparts (12) and (24), and Tex. Bus. & Com. Code § 17.50(a), subparts (1) and (3)." Appellees sought an order enjoining the Hospitals from:

> (a) seeking collection of the undisclosed E&M Fees from Plaintiffs and the members of the Class who have existing outstanding account balances;
>
> (b) representing that the Contracts authorize Defendants to charge undisclosed E&M Fees when they do not; and
>
> (c) continuing to charge E&M Fees without informing emergency room patients of such charges in advance of their being incurred.

Appellees' DTPA cause of action also stated they "further seek restitution of payments made by class members attributable to the E&M Fees charged for their emergency room visit."

The Hospitals filed a general denial answer and asserted numerous "affirmative and other defenses," including that "Defendants have no duty to make any disclosure of the [E&M Fee] that was not made" and that "Plaintiffs' claims and the claims of the putative class members are preempted and/or barred, in whole or in part," by "the applicable statute of limitations," "an express contract that obligates them to pay all hospital fees," their own knowledge regarding "the alleged omissions

upon which their claims are based," and "the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd" (EMTALA).

Appellees filed a September 3, 2020 motion for class certification which they amended on February 22, 2021. The amended class certification motion stated "[t]he acts and omissions complained of are Defendants' uniform practice of failing to notify or warn prospective ER patients of their intention to assess a separate Facility Fee, failing to obtain an agreement to pay a separate Facility Fee and charging an undisclosed Facility Fee to class members," which "constitute unfair, false, deceptive and/or misleading practices under Texas' common and statutory law." Appellees contended the following "questions of law and fact" "are common to the class and predominate over any questions affecting only individual members":

(1) whether Defendants had a duty to notify class members that they would be assessed a separate ER Facility Fee for their visit in advance of such Fee being incurred;

(2) whether Defendants provided reasonable notice to class members of their intention to assess a separate ER Facility Fee for their visit;

(3) whether Defendants' Condition of Admission form (used in Defendants' Frisco facility) and Consent of Treatment and Condition of Service (used in Defendants' Sunnyvale facility) contained an agreement to pay a separate Facility Fee for an ER visit;

(4) whether the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), prohibits Defendants from disclosing ER Facility Fees to emergency room patients in advance of providing a medical screening examination triggering such Fee; and

(5) whether Defendants charged class members a separate Facility Fee.

Appellees' motion stated this lawsuit "is properly maintained as a [Texas Rule of Civil Procedure] 42(b)(3) class action in that (1) the action meets all of the requirements of Rule 42(a), (2) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (3) a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Appellees asserted that "the exact percentage of a patient's total charges for his ER visit that is attributable to a separate ER Facility Fee is . . . shown by the data maintained and already produced by Defendants," and thus "the precise amount of any restitution due class members, or any reduction in outstanding balances as a result of eliminating the billed ER Facility Fees, can be calculated to the penny using information Defendants have produced." Additionally, appellees contended that "the 'duty to disclose' issue, the question as to whether the Consent Agreement contains an agreement for class members to pay a separate Facility Fee for their ER visit, and the interpretation of EMTALA are all appropriately determined as 'class issues' pursuant to Rule 42(d)(1)."

The Hospitals filed an April 19, 2021 "opposition" to the amended class certification motion in which they asserted, among other things, (1) plaintiffs lack standing as to any prospective relief; (2) the proposed class definition "includes future patients that are not clearly ascertainable, and is impermissibly overbroad in including past patients that made no payment and/or have no remaining account balance attributable to the complained of fee"; (3) "Texas law is clear that the claims

–7–

Plaintiffs press in this case—predicated on alleged violations of the DTPA and allegedly unconscionable conduct—cannot be pursued on a classwide basis as a matter of law"; (4) the issue of "whether Defendants have a 'duty to disclose'" the existence and amount of their E&M Fees "cannot be resolved on a classwide basis and will not advance the actual claims in this lawsuit in any material way"; and (5) "Defendants' electronic records do not show whether any portion of a patient's payment and/or account balance is attributable to the E&M Services Fee or the specific amounts attributable to the E&M Services Fee."

Appellees filed a May 17, 2021 reply brief in support of class certification, stating this action presents "two specific theories of liability." The first theory is "that Defendants charged an undisclosed, surprise [E&M] Fee to their emergency room patients despite the fact that there was no contractual agreement or obligation contained in Defendants' form contracts into which members of the plaintiff class entered to pay an E&M Fee in connection with the patients' emergency room visits." Appellees contended "[t]he determination as to whether or not the form contracts at issue herein contained an agreement or obligation to pay an E&M Fee should be made only once and on behalf of all emergency room patients," as "there are only two such contracts at issue; every class member entered into one of them; and the language they contain bearing on this point is identical." According to appellees, because "[t]he only individual issues that must be determined are the damages for individual patients and Plaintiffs offer a simple, direct and one hundred percent

accurate methodology for determining individual damages to class members," "[c]ertification under this theory of liability is completely appropriate under Tex. R. Civ. P. 42(b)(3)." Specifically, appellees argued:

> [T]he individual charges or amounts for each charge that make up the total charge billed to a patient are not separately listed in the patient's billing statement. Accordingly, the only reasonable way to attribute the patient's payment of billed charges is on a pro-rata basis for all of the individual charges. Thus, if the patient's E&M Charge shown in Defendants' electronic database was twenty percent of the Total Billed charges shown in Defendants' electronic database for a specific emergency room visit, then twenty percent of the patient's payment should logically be attributed to the E&M Charge.

Appellees stated that their second theory of liability is that the Hospitals violated "a duty to disclose their intention to charge E&M Fees to prospective emergency room patients prior to providing the services and treatment that trigger these fees." Appellees asserted that "certification as to the 'duty to disclose' theory may be more appropriately certified for declaratory and injunctive relief under Rule 42(b)(2)," but "at bare minimum certification as to this duty to disclose issue would be appropriate as an 'issue class' certified under Tex. R. Civ. P. 42(d)(1)."

The Hospitals filed a June 25, 2021 objection to appellees' seeking Rule 42(b)(2) certification "for the first time in their Reply." The Hospitals also filed supplemental declarations of Frisco Medical Center's senior revenue director Donald Jensen and Texas Regional Medical Center's business office manager Ashley Phillips, disputing appellees' assertion that the amount of each patient's

purported damages can be accurately calculated from the Hospitals' electronic billing records produced to appellees during discovery.

Following a July 16, 2021 hearing, the trial court signed a December 31, 2021 "Order Certifying Class Action with Trial Plan" that defined the class as described in appellees' petition. The order granted appellees' motion for class certification "pursuant to Rule 42 of the Texas Rules of Civil Procedure with respect to Plaintiffs' declaratory judgment claim and Plaintiffs' DTPA claims based on sections 17.46(b)(12), 17.46(24), 17.50(a)(1), and 17.50(3)," and contained "findings and conclusions" regarding the claims and issues and how Rule 42's requirements were met.[1] The order also contained a "trial plan" that stated:

---

[1] The trial court found that "the following issues are subject to being decided in a final trial in this cause":

> 1. To establish a claim for declaratory relief, Plaintiffs must establish one or more of the following:
>  i) that Defendants have a duty to disclose Facility Fees to emergency room patients in advance of providing emergency room services and/or treatment;
>  ii) that the Facility Fee covers, in whole or in part, the overhead, administrative, and operational expenses incurred in operating an emergency room facility;
>  iii) that the form contracts used in Defendants' emergency room facilities during the class period do not describe, mention, or authorize the undisclosed ER Facility Fees;
>  iv) that Defendants' billing practices concerning the Facility Fees are deceptive trade practices as defined in the DTPA and, more particularly, by Tex. Bus. Com. Code §§ 17.46 and 17.50;
>  v) that Defendants' billing practices with respect to Facility Fees are unconscionable under Texas common law;
>  vi) that Defendants' billing practices with respect to Facility Fees are an unconscionable action or course of action as defined by Tex. Bus. Com. Code § 17.45(5); and/or
>  vii) that members of the Class are not liable to Defendants for the Facility Fees and are entitled to a refund of those portions of patient payments attributable to the ER Fees during the class period.
>
> 2. To establish a claim under the DTPA, Plaintiffs must establish that Plaintiffs are consumers; that Defendants can be sued under the DTPA; and one or more of the following:

1. The law of the State of Texas will apply.

2. Class claims will be tried before a jury the same as an individual suit pursuing these claims with the exception that the Court will be required to establish the notice, proofs of claim, and other class procedures under Rule 42.

3. Plaintiffs only seek declaratory relief, injunctive relief, restitution of payments, and attorneys' fees, expert fees, and court costs. Plaintiffs seek no exemplary damages.

4. The Court will establish a procedure for reviewing proof of claim forms if required. At present, the only issues covered by the proof of claim forms include the identity of Class members, membership in the Class, and the amount of money paid by Class members for Facility Fees during the class period.

The Hospitals timely filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3).

**Standard of review and applicable law**

We review a class certification order for abuse of discretion. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008) (citing *Compaq Comput.*

---

i) that Defendants represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

ii) that Defendants failed to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

iii) that Defendants used or employed a false, misleading, or deceptive act or practice that is enumerated in section 17.46 of the DTPA and relied on by the consumer to the consumer's detriment; and/or

iv) that Defendants engaged in an unconscionable action or course of action, that is, an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

3. Defendants have asserted affirmative defenses based on EMTALA, standing, the statute of limitations, the voluntary payment rule, estoppel, waiver, among others. The Court FINDS that these defenses may be tried using class-wide evidence and that individual issues, if any, are manageable.

–11–

*Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004)); *see also Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles). "We do not, however, indulge every presumption in the trial court's favor, as compliance with class action requirements must be demonstrated rather than presumed." *Bowden*, 247 S.W.3d at 696 (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). Though a trial court generally has broad discretion to determine whether to certify a class action, it must apply a rigorous analysis to determine whether all certification requirements have been satisfied. *Id*.

Parties seeking class certification must satisfy all four requirements of Texas Rule of Civil Procedure 42(a)[2] and at least one requirement of Rule 42(b)[3]. *Sw. Ref.*

---

[2] Texas Rule of Civil Procedure 42(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law, or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[3] Texas Rule of Civil Procedure 42(b) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> . . . .
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

*Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000). Under Rule 42(d), "When appropriate (1) an action may be brought or maintained as a class action with respect to particular issues, or (2) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Though class certification does not require adjudication of the merits of the plaintiffs' claims, a proper analysis of the Rule 42 factors requires the court to go beyond the pleadings in order to understand "the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Union Pac. Res. Grp., Inc. v. Hankins*, 111 S.W.3d 69, 72 (Tex. 2003) (quoting *Bernal*, 22 S.W.3d at 435).

An order certifying a class action must define the class and the class claims, issues, or defenses. TEX. R. CIV. P. 42(c)(1)(B). The order may be altered or amended before final judgment, and the court may order the naming of additional parties in order to insure the adequacy of representation. *Id*. 42(c)(1)(C).

---

(3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these issues include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the difficulties likely to be encountered in the management of a class action.

An order granting or denying certification under Rule 42(b)(3) must state, among other things, "why the issues common to the members of the class do or do not predominate over individual issues" and, "if a class is certified, how the class claims and any issues affecting only individual members, raised by the claims or defenses asserted in the pleadings, will be tried in a manageable, time efficient manner." *Id*. 42(c)(1)(D)(vi), (viii); *see also Bernal*, 22 S.W.3d at 435 (rejecting "approach of certify now and worry later" and stating trial court's certification order "must indicate how the claims will likely be tried so that conformance with Rule 42 may be meaningfully evaluated").

**Analysis**

The Hospitals assert a single "primary issue"—that the trial court erred by certifying the class—and ten "sub-issues":

1. Did the trial court err in finding that the predominance requirement for Rule 42(b)(3) certification was met?
2. Did the trial court err in finding that the superiority requirement for Rule 42(b)(3) certification was met?
3. Did the trial court err in finding that the Rule 42(a)(2) commonality requirement was met?
4. Did the trial court err in finding that the Rule 42(a)(3) typicality requirement was met?
5. Did the trial court err in finding that the Rule 42(a)(4) adequacy requirement was met?
6. Did the trial court err in finding that the requirements for Rule 42(d)(1) certification were met?
7. Did the trial court err in denying the Hospitals due process and finding that the requirements for Rule 42(b)(2) certification were met?

8. Did the trial court err in denying the Hospitals due process and finding that the requirements for Rule 42(b)(1) certification were met?
9. Did the trial court err in defining the putative class?
10. Did the trial court err in meeting the trial plan requirement for certification?

As a threshold matter, we note that appellees concede in their appellate brief that their "unconscionability claims under DTPA § 17.45(5) and § 17.50(a)(3)" and their DTPA § 17.46(b)(24) claims are "not amenable to a determination on a class basis due to the individual issues involved." Additionally, appellees state (1) they "agree that certification under Rule 42(b)(1) is not necessary here, and its mention in the Order granting certification can be remedied upon remand," and (2) they agreed in the trial court "not to include future claims arising after class certification, and this is implicit in the class definition order."

We agree with appellees that class certification was improper as to their DTPA unconscionability and section 17.46(b)(24) claims and as to prospective relief regarding claims arising after class certification. *See Stromboe*, 102 S.W.3d at 693–94; *Heckman v. Williamson Cnty*., 369 S.W.3d 137, 150–53 (Tex. 2012); *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604, 624 (Tex. App.—Fort Worth 2017, pet. denied). We also conclude that because the record does not show Rule 42(b)(1) certification was asserted below or is applicable here, certification under that provision was an abuse of discretion. *See Stromboe*, 102 S.W.3d at 691. Thus, we do not address the portions of the Hospitals' issues regarding those matters.

As described above, the Hospitals first assert the trial court erred by finding the predominance requirement was met.[4] *See* TEX. R. CIV. P. 42(b)(3) (requiring that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members"). The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Bernal*, 22 S.W.3d at 434. If, after common issues are resolved, presenting and resolving individual issues are likely to be overwhelming or unmanageable tasks for a single jury, then common issues do not predominate. *Id*.; *see also* TEX. R. CIV. P. 42(b)(3)(D) (matters pertinent to 42(b)(3) certification include "the difficulties likely to be encountered in the management of a class action").

---

[4] The trial court's certification order included the following findings of fact and conclusions of law regarding 42(b)(3) certification:

> That questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and that class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

> The issues that will be the object of most of the efforts of the litigants and the Court will be: whether Defendants have a duty of disclosure of the ER Facility Fee, whether Defendants actually disclose the ER Facility Fee in their form Contracts, ER signage, or registration process, whether the ER Fee covers, in whole or in part, the overhead, administrative, and operational expenses incurred in operating an emergency room facility, whether failure to disclose the fee violates Texas law, and whether federal law prohibits Defendants from disclosing the Fee. . . . There are no known individual issues of law or fact that affect only individual members besides whether individuals are entitled to membership in the Class, the amounts charged to patients for the Facility Fees that remain outstanding, and the amounts patients paid to Defendants for the Facility Fees, but these individuals and these amounts are readily ascertainable from Defendants' internal records.

The Hospitals contend, among other things, that "individual damages issues" regarding appellees' requested restitution preclude certification as to both of their causes of action. According to the Hospitals,

> Whether a class member has financial responsibility for the E&M Services Fee, and if so, the amounts of any payment and/or account balance attributable to the E&M Services Fee cannot be determined from the Hospitals' electronic records . . . . Individualized review of each class member's billing and payment records, including records from third-party insurers is required. Plaintiffs acknowledge these individualized damages issues, and propose a demonstrably inaccurate, arbitrary, and speculative "methodology" for addressing them. The Order, with its abbreviated trial plan, provides no guidance on how damages will be calculated . . . . These damages questions alone would be impossible for one jury to answer.

In support of that argument, the Hospitals cite the electronic records they produced during discovery and the declarations of Mr. Jensen and Ms. Phillips.

> Appellees contend, as they did in the trial court, that:

> There is no charge-by-charge breakdown in what the hospital bills a patient, and no charge-by-charge breakdown in the payments a patient makes. It is unnecessary and irrelevant to argue that these lump sums need to be subjected to an unworkable, complex line-by-line analysis when a simple proportionate formula, as indicated above, is all that is needed to be fair and equitable. For example, if a patient's Total Charges were $10,000.00, and the E&M Fee were $2,000.00, or twenty percent of the total, and the patient was ultimately required to pay $5,000.00 after adjustments and insurer payments, then twenty percent of the $5,000.00 would be attributable to the E&M Fee.

The declarations of Mr. Jensen and Ms. Phillips (1) state that the vast majority of the Hospitals' patients are insured and (2) provide detailed analyses regarding three of plaintiffs' actual emergency care visits based on the Hospitals' electronic

records and itemized statements from the patients' insurance companies provided by the patients during discovery. Though the Hospitals' electronic record spreadsheets show the total amount each patient was charged by the hospital for their visit, the patient's E&M Fee amount, the total amount paid to the hospital by the patient's insurer, the amount the hospital then billed the patient, and any payments made by the patient to the hospital, the declarations and itemized insurance statements demonstrate that insurance companies commonly reduce the E&M Fee or disallow it altogether based on network contracts or the terms of an individual's plan. As a result, appellees' "proportionate formula" produced inaccurate amounts in all three illustrative cases: (1) $310.37 under appellees' method versus $99.97 based on the patient's insurance statement; (2) $186.82 under appellees' method versus $87.86 based on the patient's insurance statement; and (3) $176.75 under appellees' method versus $252.67 based on the patient's insurance statement. Thus, the record shows appellees' proposed method for calculating restitution amounts is substantially inaccurate and unreliable.

Because the detailed insurance information needed for an accurate calculation of each patient's final E&M Fee amount is not part of the Hospitals' electronic records, calculating those amounts accurately would require obtaining and analyzing insurance information outside of those records. Nothing in the record addresses or demonstrates how this could be done manageably, nor does the order's trial plan provide any guidance. On this record, we conclude the trial court abused its

discretion by finding that class certification of appellees' declaratory judgment and DTPA claims was proper under Rule 42(b)(3).[5] *See Bernal*, 22 S.W.3d at 435. In light of that conclusion, we do not address the Hospitals' second sub-issue, which challenges Rule 42(b)(3) superiority. *See Hankins*, 111 S.W.3d at 75; *Intercontinental Hotels Corp. v. Girards*, 217 S.W.3d 736, 739 (Tex. App.—Dallas 2007, no pet.).

Next, we consider together the Hospitals' sixth and seventh sub-issues, which contend the trial court's certification of several "discrete issues" under Rule 42(d)(1) and Rule 42(b)(2) was improper. In the order, the trial court made the following findings and conclusions as to Rule 42(d)(1):

> That this action may be further brought as a class action with respect to particular issues under Tex. R. Civ. P. 42(d)(1). Thus, it is appropriate to certify the Class with respect to the following discrete issues: (1) whether Defendants have a duty to inform ER patients of Defendants' separate Facility Fee prior to such charge being incurred; (2) whether Defendants disclose their separate Facility Fee in a reasonable manner prior to such charge being incurred; (3) whether the

---

[5] After conceding in their appellate brief that their DTPA unconscionability claims are inappropriate for class certification, appellees assert on appeal for the first time that their allegation that the Hospitals' "billing practices" were unconscionable under Texas common law should be construed to assert "that the provision of the patients' contracts purportedly allowing for an undisclosed E&M Services Fee to be added to their bills would achieve an unconscionable result and should therefore not be enforced." In other words, appellees seek to have their common law complaint of unconscionable "billing practices" construed to include a complaint that the contracts' provisions were unconscionable. *Cf. L.O.D.C. Grp., Ltd. v. Accelerate360, LLC*, No. 4:21-CV-00568, 2022 WL 3330567 at *4 (E.D. Tex. Aug. 11, 2022) (observing that Texas does not appear to recognize independent cause of action for unconscionability outside of contract-enforcement and DTPA contexts).

In their appellate reply brief, the Hospitals contend appellees' "claim that the contracts are unconscionable" is "an entirely new claim and issue that should not be considered on appeal." The record does not show appellees asserted in the trial court that the patients' contracts were unconscionable. Moreover, even if appellees' declaratory judgment claim is construed to encompass that contention, our conclusion that Rule 42(b)(3) certification was improper as to both of appellees' claims due to individual issues regarding restitution would not be affected and would preclude Rule 42(b)(3) certification as to that contention.

–19–

language in Defendants' form contract with patients provides a promise or agreement by patients to pay a separate Facility Fee for their ER visits; and (4) whether EMTALA prohibits Defendants from disclosing their intention to charge a separate ER Facility Fee to emergency room patients prior to the Fee being incurred.

As to Rule 42(b)(2), the trial court found and concluded:

That Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as whole. A declaratory judgment claim seeking uniform contract interpretation and the finding of a duty to disclose ER Facility Fees in advance of their being charged to ER patients is well suited for class certification.

The Hospitals argue that issue certification under Rule 42(d) "does not bypass" Rule 42's other requirements and thus any issues certified under Rule 42(d) must meet the requirements of Rule 42(a) and at least one subdivision of Rule 42(b). The Hospitals contend the four Rule 42(d)(1) "discrete issues" cannot satisfy those requirements because (1) those issues "fail the predominance and commonality tests and do not address the liability elements or individualized predicate fact issues raised by Plaintiffs' claims," and (2) "answers to these questions would also not resolve the individualized damages issues." Additionally, the Hospitals contend that to the extent the trial court found Rule 42(b)(2)'s requirements were met as to those "discrete issues," the trial court "erred in refusing to allow the Hospitals the opportunity to be heard on Plaintiffs' untimely Rule 42(b)(2) arguments," which

were asserted "for the first time" in their May 17, 2021 reply brief.[6] The Hospitals argue (1) "[d]espite assurances from the trial court that if the objection was overruled the Hospitals would be provided notice and a hearing, that was not provided," and (2) the Hospitals "were denied due process requiring reversal of the 42(b)(2) certification."

The record shows that at the end of the July 16, 2021 class certification hearing, the following exchange occurred:

> THE COURT: . . . So anything else counsel? And I do understand I have the two objections. So [counsel for defendants], if you'll make sure I have an order on those.
>
> [COUNSEL FOR DEFENDANTS]: Your Honor, I guess what I'm concerned about is, I have not really had an opportunity to respond to the Rule 42(b)(2) argument that was raised for the first time on reply and, therefore, my concern is if my objection is overruled, I will be denied a response.
>
> THE COURT: And if it is overruled, I'll let you know, and we can always have another hearing if we need to, okay? Will that work?
>
> [COUNSEL FOR DEFENDANTS]: Thank you, Your Honor.

On December 17, 2021, appellees filed a "Proposed Order Certifying Class Action with Trial Plan." The Hospitals filed a December 22, 2021 letter stating they "wish to notify the Court of their intention to file objections to Plaintiffs' Proposed Order" by January 14, 2022. The trial court signed the certification order on

---

[6] The record shows that in response to appellees' original motion for class certification, the Hospitals filed an October 28, 2020 "opposition" addressing Rule 42(b)(2)'s requirements and applicability. In their appellate brief, the Hospitals state that their April 19, 2021 opposition "incorporated by reference their opposition to Plaintiffs' original motion which sought certification of a materially different class under Rules 42(b)(2) and 42(d)(1)."

December 31, 2021, five and one-half months after the hearing. The record does not show the Hospitals presented any additional response arguments during that time or after, nor did the Hospitals assert the need for another hearing. On this record, we cannot conclude the Hospitals were denied due process regarding their objections. *See Campbell v. Hiesermann*, No. 02-21-00221-CV, 2022 WL 3456735, at *6 (Tex. App.—Fort Worth Aug. 18, 2022, no pet.) (mem. op.) (citing cases supporting proposition that no due process violation occurs where party had opportunity to act).

That said, "Rule 42(d) cannot be used to manufacture compliance with certification prerequisites." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 455 (Tex. 2007). We concluded above that Rule 42(b)(3) certification was improper regarding both of appellees' claims. To the extent appellees sought Rule 42(b)(3) certification regarding "particular issues" from those claims under Rule 42(d), the record does not show any basis for that request other than to avoid Rule 42(b)(3)'s requirements as to the other, problematic portions of the claims. Appellees do not explain, and the record does not show, how Rule 42(b)(3) certification regarding "particular issues" was "appropriate" in this case. *See id.*; TEX. R. CIV. P. 42(d). Thus, the trial court abused its discretion to the extent it determined Rule 42(b)(3) class certification was proper as to any of the Rule 42(d)(1) "discrete issues" described in the order.

As to Rule 42(b)(2) certification, the trial court's order concluded that "[a] declaratory judgment claim seeking uniform contract interpretation and the finding

–22–

of a duty to disclose ER Facility Fees in advance of their being charged to ER patients is well suited for class certification." Those two matters encompass three of the four "discrete issues" the trial court concluded were appropriate for Rule 42(d)(1) certification: (1) "whether Defendants have a duty to inform ER patients of Defendants' separate Facility Fee prior to such charge being incurred"; (2) "whether the language in Defendants' form contract with patients provides a promise or agreement by patients to pay a separate Facility Fee for their ER visits"; and (3) "whether EMTALA prohibits Defendants from disclosing their intention to charge a separate ER Facility Fee to emergency room patients prior to the Fee being incurred."[7] Thus, we now address the Hospitals' remaining sub-issues as they pertain to Rule 42(b)(2) class certification regarding those three "discrete issues."

Rule 42(b) first requires that "the prerequisites of subdivision (a) are satisfied." In their third and fourth sub-issues, the Hospitals contend Rule 42(a)'s commonality and typicality requirements were not met. *See* TEX. R. CIV. P. 42(a)(2)–(3). Appellees respond, (1) "[w]hat Appellees contend is that standardized disclosures as to Hospitals' intention to add such Fees to the accounts of all emergency patients, whether in signage, in contracts, or in registration procedures and paperwork, are appropriate and necessary"; (2) "this is a merits issue that should

---

[7] Because the remaining Rule 42(d)(1) "discrete issue"—"whether Defendants disclose their separate Facility Fee in a reasonable manner prior to such charge being accrued"—is not within the two matters described in the order's Rule 42(b)(2) certification provision and, as described above, was not "appropriate" for Rule 42(b)(3) certification as a particular issue, we conclude class certification as to that particular issue was an abuse of discretion. *See* TEX. R. CIV. P. 42(b), (d).

be decided the same for all"; (3) "the fact that *some* patients may have some awareness or information as to Appellants' E&M Fee" does not "impinge on the question of whether the Hospital had a general duty to disclose this fee to *all* its emergency patients"; and (4) "EMTALA either prohibits such disclosure or it does not." We agree with appellees that the record supports a determination that the three "discrete issues" in question all describe matters pertaining to all plaintiffs and for which individual awareness regarding E&M Fees is not controlling. Thus, the trial court did not abuse its discretion by determining that commonality and typicality were met as to those three "discrete issues." *See Bailey v. Kemper Cas. Ins. Co.*, 83 S.W.3d 840, 853 (Tex. App.—Texarkana 2002, pet. dism'd w.o.j.) ("Commonality does not require that all questions of law and fact must be identical, but only that an issue of law or fact exists that inheres in the complaints of all class members."); *Riemer v. State*, 452 S.W.3d 491, 502 (Tex. App.—Amarillo 2014, pet. denied) (explaining that presence of arguable defense unique to certain plaintiff negates typicality only when it is predictable that such defense will become major focus of litigation such that representation of rest of class will suffer).

In their fifth sub-issue, the Hospitals assert the trial court erred by finding Rule 42(a)(4)'s adequacy requirement was met as to Ms. Bolen. The Hospitals assert Ms. Bolen "was unable to recall any of the operative facts underlying her claim and demonstrated that she failed to remain abreast of the litigation." On this record, we cannot agree the trial court abused its discretion regarding adequacy. *See Stromboe*,

–24–

102 S.W.3d at 691 ("A trial court has discretion to rule on class certification issues, and some of its determinations—like those based on its assessment of the credibility of witnesses, for example—must be given the benefit of the doubt."); *see also* TEX. R. CIV. P. 42(c)(1)(C) (before final judgment, trial court may order naming of additional parties to insure adequacy of representation).

Next, the Hospitals focus on Rule 42(b)(2)'s provision that declaratory or injunctive relief must be "appropriate . . . with respect to the class as a whole." TEX. R. CIV. P. 42(b)(2). The key to the Rule 42(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Lon Smith & Assocs*., 527 S.W.3d at 639 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). "That is, a rule 42(b)(2) class must be sufficiently cohesive to warrant adjudication by representation." *Id*. (citing *Compaq*, 135 S.W.3d at 667).

The Hospitals contend "any declaratory or injunctive relief could not provide relief to each class member because the requisite cohesiveness of the class is lacking." According to the Hospitals, (1) a single declaratory judgment that the Hospitals have a duty to disclose the E&M Fee would not provide relief to each class member because some patients had prior knowledge of the E&M Fee and thus disclosure to them "is of no consequence"; (2) "the class members signed different versions of contracts"; and (3) some class members' insurers denied the E&M Fee

–25–

and "[t]hese class members lack standing." Additionally, the Hospitals assert "[t]he standard under EMTALA is that the Hospitals must not 'unduly discourage' a patient from remaining for further evaluation" and "[w]hat unduly discourages one patient might not unduly discourage another, making this issue one that cannot be decided on a class-wide basis."

The record does not show that more than a few different contract versions are involved here. *See* TEX. R. CIV. P. 42(d)(2) (allowing for subclasses). Also, as to standing, an insurer's denial of an E&M Fee does not negate the fact that the patient was charged the fee. The Hospitals' arguments disregard the limited scope of the three "discrete issues" in question, which specifically describe relief pertaining to all class members. On this record, we conclude the trial court did not abuse its discretion by determining Rule 42(b)(2)'s cohesiveness requirement was satisfied as to those three "discrete issues."[8]

In their ninth issue, the Hospitals assert the trial court erred "in defining the putative class." The Hospitals contend the order's definition improperly includes (1) patients whose claims are barred by the DTPA's two-year statute of limitations; (2) "unknowable individuals who may in the future receive treatment at the Hospitals' EDs"; and (3) patients who "made payments and/or have a remaining

---

[8] To the extent the trial court's order can be construed to also certify a Rule 42(b)(2) class action as to appellees' entire claims, the above-described calculation of restitution amounts precludes such certification due to lack of cohesiveness. *See Compaq*, 135 S.W.3d at 671 ("In many cases, this [cohesiveness] analysis will be identical to the 'predominance and superiority' directive undertaken by trial courts certifying (b)(3) classes.").

account balance <u>for their visit</u>," rather than just patients who "made payments and/or have a remaining account balance for <u>an E&M Services Fee</u>." To the extent those complaints involve appellees' DTPA claim or restitution damages, the complaints are not pertinent to the three "discrete issues" in question. Additionally, we agree with appellees' above-described position that an end date is "implicit" in the order signed, which can be clarified on remand.

The Hospitals' tenth issue asserts the trial court erred "in meeting the trial plan requirement for certification." "A trial court's certification order must indicate how the claims will likely be tried so that conformance with Rule 42 may be meaningfully evaluated." *Bernal*, 22 S.W.3d at 435. The Hospitals' trial plan complaints and cited authority pertain primarily to deficiencies regarding Rule 42(b)(3) individual issues, which were addressed above and are not implicated as to the three "discrete issues" in question. To the extent the Hospitals complain the order fails to sufficiently address conformance with Rule 42's other requirements, we disagree. Though the order's "trial plan" section is minimal at best, the remaining sections of the eight-page order specifically address satisfaction of Rule 42's requirements. Thus, the trial court did not abuse its discretion regarding the trial plan. *See id*.

We affirm the order's Rule 42(d)(1) certification of a Rule 42(b)(2) class action as to the three "discrete issues" of (1) "whether Defendants have a duty to inform ER patients of Defendants' separate Facility Fee prior to such charge being incurred"; (2) "whether the language in Defendants' form contract with patients

provides a promise or agreement by patients to pay a separate Facility Fee for their ER visits"; and (3) "whether EMTALA prohibits Defendants from disclosing their intention to charge a separate ER Facility Fee to emergency room patients prior to the Fee being incurred." We reverse the trial court's order as to class certification regarding all other claims and issues. We remand this case to the trial court for further proceedings.

/Cory L. Carlyle/

220058f.p05

CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

FRISCO MEDICAL CENTER,
L.L.P., AND TEXAS REGIONAL
MEDICAL CENTER, L.L.C.,
Appellants

No. 05-22-00058-CV    V.

PAULA CHESTNUT AND
WENDY BOLEN, ON BEHALF OF
THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED,
Appellees

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-07283.
Opinion delivered by Justice Carlyle.
Justices Molberg and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the trial court's "Order Certifying Class Action With Trial Plan" is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the order's Rule 42(d)(1) certification of a Rule 42(b)(2) class action as to the three discrete issues of (1) "whether Defendants have a duty to inform ER patients of Defendants' separate Facility Fee prior to such charge being incurred"; (2) "whether the language in Defendants' form contract with patients provides a promise or agreement by patients to pay a separate Facility Fee for their ER visits"; and (3) "whether EMTALA prohibits Defendants from disclosing their intention to charge a separate ER Facility Fee to emergency room patients prior to the Fee being incurred." We **REVERSE** the trial court's order as to class certification regarding all other claims and issues. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of November, 2022.